# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

(1) blue Samsung J7 phone
IMEI No: 355865104056194

) Case No.
)
) 20MJ8616
)

**FILED**

FEB 1 8 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |
| 8 USC 1325 | Improper Entry by an Alien |

The application is based on these facts:

See attached affidavit of John Ortiz, USBP Agent

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John Ortiz, USBP Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/13/2020

*Judge's signature*

City and state: El Centro, California    Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:
   One blue Samsung J7 phone
   IMEI No: 355865104056194
   Seized from YEPIZ-Fonseca, Christian

Target Device 1, seized in connection with Event No: CAX2001000252, is currently in the evidence room for El Centro Border Patrol, located at 211 West Aten Road, Imperial, CA 92251.





## ATTACHMENT B-1

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 27, 2019 through January 27, 2020:

- a. tending to indicate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

- b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

- c. tending to identify co-conspirators, criminal associates, or others involved in bringing undocumented aliens into the United States and transporting aliens within the United States;

- d. tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

- e. tending to identify the user of, or persons with control over or access to, the Target Device; or

- f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, Sections 1324 and 1325.**

# AFFIDAVIT

I, Agent John Ortiz, after being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrants to search the following electronic devices:

> One blue Samsung J7 phone
> IMEI No: 355865104056194
> Seized from YEPIZ-Fonseca, Christian
> (Target Device 1)
>
> One blue Motorola G7 phone
> IMEI No: 359527094686507
> Seized from YEPIZ-Fonseca, Christian
> (Target Device 2)
>
> One gold Samsung phone
> Seized from DURAN-Martinez, Yesenia Jasmine
> (Target Device 3)
>
> One black Motorola XT1921-3 phone
> IMEI No: 351841092832957
> Seized from RIOS-Romero, Alejandro
> (Target Device 4)

as further described in Attachments A-1, A-2, A-3, and A-4, and seize evidence of crimes, specifically violations of Title 8, United States Code, Section 1324 and 1325 as further described in Attachments B-1, B-2, B-3, and B-4. The requested warrants relate to the investigation and prosecution of Christian YEPIZ-Fonseca (YEPIZ), Yesenia Jasmine DURAN-Martinez (DURAN), and Alejandro RIOS-Romero (RIOS) for the transportation of illegal aliens within the United States. The Target Devices are currently in the evidence room for El Centro Border Patrol, located at 211 West Aten Road, Imperial, CA 92251.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement.

1

Because this affidavit is made for the limited purpose of obtaining a search warrants for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## EXPERIENCE AND TRAINING

3. I have been employed as a United States Border Patrol (USBP) Agent since 2011. I am currently assigned to the El Centro Sector Prosecutions Unit. I am a graduate of the Basic Border Patrol Training Academy in Artesia, New Mexico.

4. During my tenure with USBP, I have participated in the investigation of various alien smuggling organizations involved in the bringing in and transportation of illegal aliens into and within the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in alien smuggling organizations, I have gained a working knowledge of the operational habits of alien smugglers, in particular those who traffic aliens into the United States from Mexico, and those who transport aliens within the Southern District of California once they have entered the United States.

5. I am aware that it is common practice for alien smugglers to work in concert utilizing cellular telephones and portable radios to maintain communications with co-conspirators in order to further their criminal activities. A common tactic for alien smugglers is to communicate with the smuggled aliens regarding smuggling arrangements of payment and travel, as well as with the names, photographs, pick up locations, and phone numbers of co-conspirators and/or other aliens to be smuggled.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory

cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the smuggling of illegal aliens may yield evidence:

    a.    tending to indicate efforts to bring undocumented aliens into the United States as well as transport aliens within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in bringing undocumented aliens into the United States and transporting aliens within the United States;

    d.    tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

7. On January 26, 2020, Border Patrol Agents assigned to El Centro Sector Intelligence Unit and the Field Intelligence Team (FIT) were conducting anti-smuggling and intelligence gathering duties within the El Centro Border Patrol Sector's area of responsibility. The agents were dressed in plain clothes and operating unmarked service vehicles.

8. At approximately 6:25 p.m., a dispatch over the radio indicated a 2001 Mitsubishi SUV, bearing California license plate number 4RQW880, may be involved

1 in alien smuggling and was traveling west on Highway 98, west of Calexico, California. Agents located the vehicle still traveling west on Highway 98 near Ocotillo, California.

9. Agents followed the Mitsubishi to a Chevron gas station off state Route 2 in Ocotillo, California. Route 2 is a rural two-lane highway that stretches between Interstate 8 and Highway 98. Where Route 2 begins at the intersection of Highway 98 is directly north of the United States and Mexico border. These three highways offer direct egress from the immediate border area and are used by alien smugglers to move their illicit cargo away from the border.

10. At the gas station, agents observed a female, later identified as DURAN, exit the driver's side of the Mitsubishi and approach a black Volkswagen Jetta, bearing Arizona license plate number PW12098, and speak to the male driver, later identified as YEPIZ. Both vehicles were parked in the same area of the gas station, and DURAN and YEPIZ spoke with each other while also making phone calls. After a few minutes, YEPIZ walked into the gas station, DURAN returned to the Mitsubishi and entered the front passenger seat. Once YEPIZ returned from the store, he entered the driver seat of the Mitsubishi, drove north on Route 2, and then continued on Interstate 8 heading west.

11. Ultimately, the Mitsubishi exited Interstate 8 and parked at the Golden Acorn Casino (the Casino) in Boulevard, California. The Casino is a common staging area for alien smuggling activities in rural eastern San Diego County. Agents continued surveillance of the Mitsubishi, and observed that DURAN remained in the vehicle for over an hour while YEPIZ went in and out of the casino. Eventually, YEPIZ returned to the vehicle, got into the driver's seat, and continued to sit for another half hour.

12. After approximately an hour and a half at the Casino, YEPIZ and DURAN left the area and drove towards Interstate 8 in the Mitsubishi. Agents observed the Mitsubishi pass the entrance to Interstate 8, park at the cul-de-sac beyond the highway, and turn around facing the freeway entrance. Agents recognized this maneuver as a 'heat check'. This tactic is used by alien smugglers to determine if they are being

4

followed by law enforcement or other smugglers. After some time, the Mitsubishi entered Interstate 8, this time heading east, back towards Ocotillo, California.

13. The Mitsubishi returned to the same Chevron gas station, and parked by the Volkswagen. YEPIZ and DURAN exited the Mitsubishi and then opened the hood of the Volkswagen. After approximately forty-five minutes, YEPIZ closed the hood and entered the driver seat of the Volkswagen. Agents ran record checks on the Volkswagen and learned that it had several recent releases of liability with the Department of Motor Vehicles. Alien smugglers often use vehicles with a release of liability because the vehicle is in the process of a change of ownership. As such, that status makes it difficult for law enforcement to identify the owner or culpable party should the vehicle be seized in a criminal act.

14. After YEPIZ left the gas station driving the Volkswagen, DURAN returned to the Mitsubishi and followed YEPIZ. Agents watched from a distance and observed that YEPIZ and DURAN were driving east on Highway 98 back towards Calexico, California. Agents followed YEPIZ and DURAN and noticed that both vehicles pulled over to the shoulder near a landmark that agents refer to as "Mcdougal's." This area is commonly used as a pick-up location for load drivers in the area. As agents passed the two vehicles, agents observed one person emerge from the roadside desert and enter the Mitsubishi. Based on their training, experience, and the totality of the circumstances, agents believed that YEPIZ and DURAN were involved in alien smuggling.

15. Agents continued to follow the two vehicles into the city of Calexico. The Mitsubishi turned south on Klove Avenue and parked on the street near an apartment complex. The Volkswagen then parked behind the Mitsubishi and several people got out of the vehicles and began entering different vehicles. The agents decided to make contact, but the Volkswagen left before all the agents were able to move in. As the Volkswagen pulled away, agents followed while the remaining agents moved in on the Mitsubishi.

16. Agents approached the driver side of the Mitsubishi and observed several individuals stacked and crammed inside the SUV while questioning DURAN as to her citizenship. DURAN stated she was a United States citizen. Agents then ordered the other individuals out of the vehicle and began questioning them regarding their citizenship. All ten individuals readily admitted to being citizens of Mexico or Chile, with no legal status to enter or remain in the United States.

17. Following the seizure of the Mitsubishi, agents initiated a vehicle stop of the Volkswagen near the intersection of Ollie Avenue and Roosevelt Street in Calexico. Agents approached the driver side and asked YEPIZ to state his citizenship. YEPIZ stated he was a citizen of the United States. Agents then observed three male passengers, later identified as Alejandro RIOS-Romero, Jose Alexis RAMIREZ-Deleon, and Brian Rene OCHOA-Ruvalcaba, in the Volkswagen. Agents later determined that all three were illegal aliens from Mexico working as foot guides for this group, all of whom also did not have any legal standing to enter or remain in the United States. Foot guides are commonly used by criminal organizations to smuggle illegal aliens into the United States due to their knowledge of the terrain. Charges were not filed against RAMIREZ and OCHOA in relation to alien smuggling.

18. On January 27, 2020, at approximately 12:20 a.m., YEPIZ and DURAN were placed under arrest for alien smuggling, and Alejandro RIOS-Romero, Jose Alexis RAMIREZ-Deleon, and Brian Rene OCHOA-Ruvalcaba were placed under arrest for illegal entry into the United States. During a search incident to arrest agents seized Target Devices 1 and 2 from YEPIZ, Target Device 3 from DURAN, and Target Device 4 from RIOS.

19. Based upon my training and experience, consultation with other law enforcement officers experienced in alien smuggling investigations, and all of the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices. In light of the above

1 facts and my experience and training, there is probable cause to believe that Defendants
2 were using their respective Target Devices to communicate with each other and others
3 to further the smuggling of illegal aliens into and within the United States. Further, in
4 my training and experience, alien smugglers may be involved in the planning and
5 coordination of an alien smuggling event in the days and weeks prior to an event. Co-
6 conspirators are also often unaware of a defendant's arrest and will continue to attempt
7 to communicate with a defendant after their arrest to determine the whereabouts of the
8 aliens. Accordingly, I request permission to search the Target Devices for data
9 beginning on December 27, 2019 through January 27, 2020.

## **METHODOLOGY**

11 20. It is not possible to determine, merely by knowing the cellular telephone's
12 make, model and serial number, the nature and types of services to which the device is
13 subscribed and the nature of the data stored on the device. Cellular devices today can
14 be simple cellular telephones and text message devices, can include cameras, can serve
15 as personal digital assistants and have functions such as calendars and full address books
16 and can be mini-computers allowing for electronic mail services, web services and
17 rudimentary word processing. An increasing number of cellular service providers now
18 allow for their subscribers to access their device over the internet and remotely destroy
19 all of the data contained on the device. For that reason, the device may only be powered
20 in a secure environment or, if possible, started in "flight mode" which disables access
21 to the network. Unlike typical computers, many cellular telephones do not have hard
22 drives or hard drive equivalents and store information in volatile memory within the
23 device or in memory cards inserted into the device. Current technology provides some
24 solutions for acquiring some of the data stored in some cellular telephone models using
25 forensic hardware and software. Even if some of the stored information on the device
26 may be acquired forensically, not all of the data subject to seizure may be so acquired.
27 For devices that are not subject to forensic data acquisition or that have potentially
28 relevant data stored that is not subject to such acquisition, the examiner must inspect

1  the device manually and record the process and the results using digital photography.
2  This process is time and labor intensive and may take weeks or longer.

3  21. Following the issuance of this warrant, I will collect the Target Devices
4  and subject them to analysis. All forensic analysis of the data contained within the
5  telephones and their memory cards will employ search protocols directed exclusively
6  to the identification and extraction of data within the scope of the warrant.

7  22. Based on the foregoing, identifying and extracting data subject to seizure
8  pursuant to this warrant may require a range of data analysis techniques, including
9  manual review, and, consequently, may take weeks or months. The personnel
10 conducting the identification and extraction of data will complete the analysis within
11 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

13 23. Law enforcement has not yet attempted to obtain the evidence sought by
14 this warrant.

8

## CONCLUSION

24. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of YEPIZ, DURAN, and RIOS' violations of Title 8, United States Code, Section 1324 and 1325. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1, A-2, A-3 and A-4, and seize the items listed in Attachments B-1, B-2, B-3, and B-4 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Agent John Ortiz

United States Border Patrol

Subscribed and sworn to before me this /3th day of February, 2020.

Honorable Ruth Bermudez Montenegro

United States Magistrate Judge

9

## **ATTACHMENT A-1**
PROPERTY TO BE SEARCHED

The following property is to be searched:
        One blue Samsung J7 phone
        IMEI No: 355865104056194
        Seized from YEPIZ-Fonseca, Christian

Target Device 1, seized in connection with Event No: CAX2001000252, is currently in the evidence room for El Centro Border Patrol, located at 211 West Aten Road, Imperial, CA 92251.





## ATTACHMENT B-1

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 27, 2019 through January 27, 2020:

a. tending to indicate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in bringing undocumented aliens into the United States and transporting aliens within the United States;

d. tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, Sections 1324 and 1325.**

## **ATTACHMENT A-2**
PROPERTY TO BE SEARCHED

The following property is to be searched:
        One blue Motorola G7 phone
        IMEI No: 359527094686507
        Seized from YEPIZ-Fonseca, Christian

Target Device 2, seized in connection with Event No: CAX2001000252, is currently in the evidence room for El Centro Border Patrol, located at 211 West Aten Road, Imperial, CA 92251.





# ATTACHMENT B-2

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 27, 2019 through January 27, 2020:

a. tending to indicate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in bringing undocumented aliens into the United States and transporting aliens within the United States;

d. tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, Sections 1324 and 1325.**

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:
> One gold Samsung phone
> Seized from DURAN-Martinez, Yesenia Jasmine

Target Device 3, seized in connection with Event No: CAX2001000252, is currently in the evidence room for El Centro Border Patrol, located at 211 West Aten Road, Imperial, CA 92251.





## **ATTACHMENT B-3**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 27, 2019 through January 27, 2020:

a. tending to indicate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in bringing undocumented aliens into the United States and transporting aliens within the United States;

d. tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, Sections 1324 and 1325.**

# ATTACHMENT A-4
## PROPERTY TO BE SEARCHED

The following property is to be searched:
    One black Motorola XT1921-3
    IMEI No: 351841092832957
    Seized from RIOS-Romero, Alejandro

Target Device 4, seized in connection with Event No: CAX2001000252, is currently in the evidence room for El Centro Border Patrol, located at 211 West Aten Road, Imperial, CA 92251.





# **ATTACHMENT B-4**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 27, 2019 through January 27, 2020:

a. tending to indicate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate efforts to bring undocumented aliens into the United States and transport aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in bringing undocumented aliens into the United States and transporting aliens within the United States;

d. tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, Sections 1324 and 1325.**